UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BOWEN BLIVEN             :
                         :
        v.               :    C.A. No. 11-323S
                         :
MICHAEL J. ASTRUE        :
Commissioner of the Social Security  :
Administration           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on July 27, 2012 seeking to reverse the decision of the Commissioner. On March 30, 2012, Plaintiff filed a Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 10). On April 30, 2012, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 11).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion

to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 10) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on June 22, 2009 alleging disability since April 30, 2008. (Tr. 88-89). His date last insured for DIB is December 31, 2013. (Tr. 9). The application was denied initially on October 30, 2009 (Tr. 45-47) and on reconsideration on February 9, 2010. (Tr. 49-51). On February 18, 2010, Plaintiff requested an administrative hearing. (Tr. 59). On February 3, 2011, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 18-40). The ALJ issued an unfavorable decision to Plaintiff on February 22, 2011. (Tr. 4-17). The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ did not properly evaluate his pain and activities of daily living, and erred by refusing to give significant weight to Dr. O'Mara's opinions.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's credibility determination is adequately supported by the record, and Plaintiff has failed to establish that the ALJ improperly evaluated Dr. O'Mara's opinions.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV.    THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A.    Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

   1.  **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

Plaintiff was forty-eight years old on the date of the ALJ's decision. (Tr. 23). Plaintiff is a high school graduate and worked in the relevant past as a carpenter and as a supervisor on home construction sites. (Tr. 23, 110). He was a part owner of a home construction business until 2008. (Tr. 23). Plaintiff had back surgery in 2003 (Tr. 215), and alleges disability since April 30, 2008 due to severe lower back pain and mental illness. (Tr. 124).

On February 22, 2011, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act from April 30, 2008 through the date of the decision. (Tr. 17). At Step 2, the ALJ found that Plaintiff's degenerative disc disease and depression were "severe" impairments as defined in 20 C.F.R. § 404.1520(c). (Tr. 9). As to RFC, the ALJ found that Plaintiff was able to perform work at the sedentary level with certain postural and environmental limitations. (Tr. 10-11). Plaintiff was further found to be able to maintain attention and concentration sufficient to perform uncomplicated tasks of up to several steps over an eight-hour workday, assuming short

work breaks on average every two hours. (Tr. 11). Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff could no longer work as a carpenter/supervisor but could perform other sedentary, unskilled work such as a bench assembler, hand packer and inspector. (Tr. 16-17).

### B. Plaintiff Has Shown No Error in the ALJ's Credibility Determination

While the ALJ found that Plaintiff's impairments could reasonably be expected to produce the pain and other symptoms alleged by Plaintiff, he concluded that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his RFC assessment for a range of sedentary work. (Tr. 11-12). Plaintiff challenges this conclusion and argues that the ALJ improperly found that his activities of daily living and the fact that he was not a surgical candidate were inconsistent with his pain complaints. As discussed below, Plaintiff has shown no error in the ALJ's credibility determination.

When evaluating a claimant's pain complaints, an ALJ is permitted under Avery, 797 F.2d at 29, to consider a claimant's level of daily activities and pursuit of treatment, other than medication, for relief of pain. In addition, if there is conflicting evidence on such points or conflicting but reasonable inferences to be drawn from the evidence, "[t]he ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). Finally, when supported by specific findings, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference." Frustaglia v. Sec'y of HHS, 829 F.2d 192, 193 (1st Cir. 1987).

Here, the ALJ appropriately evaluated Plaintiff's credibility applying the <u>Avery</u> factors and adequately explained the bases for his conclusion.  <u>See also</u> 20 C.F.R. § 404.1529.  Plaintiff contends that substantial evidence does not support the ALJ's finding that his activities of daily living "belie the severity of the symptoms alleged." (Tr. 14).  According to Plaintiff, while the ALJ found that he could engage in numerous daily activities, he reported that he was only able to perform those activities with "significant difficulty." (Document No. 10 at pp. 6-8).  In his decision, the ALJ accurately noted that Plaintiff testified that he watched television, made his own meals, went grocery shopping, saw his parents daily and washed his own dishes and laundry. (Tr. 14).  The ALJ also accurately noted that Plaintiff reported in July 2009 (<u>see</u> Ex. 3E) that he walked and fed the dog, fed and played with the cat, prepared light meals, did his laundry and cleaning, mowed the lawn with breaks, drove a car, shopped for groceries, handled his finances, read, watched television, and performed personal care activities, though he had some difficulty putting on his socks, tying his shoes, and bending over the sink. (Tr. 14).  Plaintiff lives independently. (Tr. 23).

The ALJ's finding on this issue is clearly supported and substantiated by the evidence in the record.  First, Plaintiff testified at the hearing that he sees his parents, who live eight miles away, every other day, he generally spends his day reading and watching television, he can vacuum and wash a few dishes (Tr. 28), he does his own laundry and cooks his own meals, he goes food shopping (Tr. 29), he helps his parents with small chores and assisted his younger brother with snow blowing by using a shovel to chip icy snow into chunks for the snow blower. (Tr. 32).  Plaintiff also stated in a July 2009 Function Report that he walked the dog, fed and played with his dog and cat, and occasionally took his parents to the doctor. (Tr. 117-118).  Plaintiff further reported that he took care of his parents at times, had no problems bathing, feeding himself or using the toilet, though he

had difficulty putting on his socks, tying his shoes, and bending over the sink. (Tr. 118). Plaintiff added that he prepared his own meals, did his own laundry and cleaning, mowed the lawn with breaks (Tr. 119), drove his car, went shopping for groceries, paid his bills, handled his savings account (Tr. 120), and read and watched television as hobbies. (Tr. 121). In addition, on August 4, 2010, Plaintiff informed Dr. O'Mara that he was able to mow the lawn that day (Tr. 327), and on September 23, 2010, he told Dr. Parmentier that he worked around the house. (Tr. 351).

Plaintiff argues, however, that he engaged in these daily activities only with significant difficulty, and the fact that he could perform "very basic tasks" does not mean that he could engage in "sustained employment." (Document No. 10 at p. 7). As was discussed above, the ALJ considered Plaintiff's statements about his daily activities, and his conclusion is supported by substantial evidence. Further, it is important to recognize that the ALJ did not completely reject Plaintiff's allegations but only did so to the extent they were inconsistent with his finding that Plaintiff could perform a limited range of <u>sedentary</u> work. (Tr. 11-12).

Plaintiff claims that the ALJ relied too heavily on the fact that he did not undergo placement of a morphine pump and was not a surgical candidate, given that Dr. Hamburger stated that he was not a candidate due to his psychiatric condition. (Document No. 10 at pp. 8-9). Plaintiff's argument, however, takes the ALJ's statement out of context. In assessing Plaintiff's subjective complaints, the ALJ found that Plaintiff's treatment history did not fully support his subjective complaints and allegations of disability. (Tr. 14). In support of that finding, the ALJ described in his decision that during the relevant period, Plaintiff only engaged in physical therapy for two to three months in the spring of 2010 and subsequently ceased treatment on his own in May 2010. <u>Id.</u> The ALJ then noted that Plaintiff had received two courses of injections since his alleged onset date,

and the second course in November 2010 appeared to be of significant help, as he only used Advil for pain thereafter, and his reported pain was reduced to three out of ten. Id. The ALJ also noted that Plaintiff was not considered a candidate for surgery. Id. The ALJ further noted that with respect to Plaintiff's mental impairment, he had not sought or obtained counseling since his alleged onset date, and he only periodically saw Dr. Parmentier for medication management. Id. Despite Plaintiff's focus on the reference to not being a candidate for surgery, it was only one of six reasons the ALJ provided as support for his conclusion that Plaintiff's treatment history failed to "fully support" Plaintiff's allegations. Id.

While reasonable minds might differ as to the importance of this evidence, the bottom line is that Plaintiff was not found to be a candidate for surgery to address his pain complaints and the ALJ is permitted to consider the presence or absence of pain relief treatment in evaluating pain complaints. Also, it is clear from the ALJ's decision that this was one of several factors relied upon and not the most significant. (Tr. 14). Finally, approximately two months prior to the ALJ hearing, Dr. Hamburger reported that his latest round of injections provided pain relief to Plaintiff and reduced his pain "down to a 3/10." (Tr. 500).

      **C.**      **The ALJ Did Not Err in His Evaluation of Dr. O'Mara's Opinions**

Dr. O'Mara is a primary care physician who started seeing Plaintiff in 2009. (Tr. 170). On January 19, 2011, Dr. O'Mara completed a physical capacity evaluation and pain questionnaire at the request of Plaintiff's attorney and in anticipation of the ALJ hearing held in early February. (Tr. 498-499). The ALJ discusses these opinions in his decision and concludes that they are "not entitled to significant probative weight" because they are not supported by the medical record or treatment history. (Tr. 15). Plaintiff has shown no error in the ALJ's treatment of Dr. O'Mara's opinions.

Dr. O'Mara is a treating physician. Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends, in part, on the length of the treating relationship, the frequency of the examinations, consistency with the record and record support. 20 C.F.R. § 404.1527(d)(2)-(5). In addition, more weight is generally given to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a non-specialist. Id. If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2). See Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 2010 WL 2573086 at **2-3 (1st Cir. 2010) (per curiam) (finding that the ALJ must give "supportable reasons" for rejecting a treating physician opinion).

In his physical capacity evaluation (Tr. 498), Dr. O'Mara found Plaintiff to be significantly more physically limited than the ALJ's RFC assessment (Tr. 10-11) and the opinions of the medical consultants, Dr. Bernardo and Dr. Laurelli (Exs. 9F and 11F).[1] In his brief, Plaintiff describes Dr. O'Mara as an "expert." However, as previously noted, Dr. O'Mara is a primary care physician and

---

[1] In addition to discounting the weight given to Dr. O'Mara's opinion, the ALJ also declined to give significant probative weight to Dr. Bernardo and Dr. Laurelli's medical opinions because the full record supported a finding that Plaintiff was more limited than they opined. (Tr. 15).

not a pain, neurology or mental health expert or "specialist" whose opinions are generally entitled to greater weight. See 20 C.F.R. § 404.1527(c)(5).

Plaintiff devotes only one paragraph of his brief to this argument and has not shown any error in the ALJ's conclusion that Dr. O'Mara's opinions are not supported by the record. In fact, the record is supportive of the ALJ's evaluation of Dr. O'Mara's opinion. For instance, on January 15, 2009, Dr. O'Mara noted that Plaintiff exhibited "good flexibility" and did "not appear to have any back pain at all when changing positions on the exam table." (Tr. 172). On May 4, 2010, Dr. Hamburger noted that Plaintiff's "neurologic exam [wa]s relatively under-whelming." (Tr. 303). On August 4, 2010, Dr. O'Mara noted that Plaintiff was "happy to be off his [pain] meds and does not want to go back on them – Is presently not having any pain sx's," i.e., symptoms. (Tr. 328). On August 11, 2010, Dr. O'Mara noted that Plaintiff did "not appear to be complaining of a lot of pain." (Tr. 330). Finally, on November 23, 2010, Dr. Hamburger reported that Plaintiff obtained relief from an injection and his "pain is down to a 3/10." (Tr. 500).

While reasonable minds might differ as to the interpretation of this medical evidence, the issue presented in this administrative appeal is not whether this Court would have reached the same conclusion as did the ALJ. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). Rather, the narrow issue presented is whether the ALJ's findings have adequate support in the record. Since they do, there is no basis upon which to reject such findings in this case. The ALJ thoroughly weighed the medical evidence in the context of the record as a whole and adequately explained his reasoning. Plaintiff has simply

not shown the existence of reversible error in the ALJ's treatment of the conflicting medical opinions and RFC assessments in this case.

## VI.  CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 10) be DENIED.  Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 16, 2012